# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ADIA HOLDINGS, INC.,**<br>   on behalf of itself and a class of similarly situated business entities and persons,<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES OF AMERICA**,<br><br>*Defendant*. | Case No. 23-623C<br>(Chief Judge Elaine D. Kaplan)<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Adia Holdings, Inc., on behalf of itself and a Class of similarly situated business entities, by and through its legal counsel, files this first amended class action complaint and alleges—based on personal knowledge as to itself and otherwise based on information and belief—as follows:

### I.   INTRODUCTION: NATURE OF THE ACTION

1. In response to the crippling effects of the coronavirus pandemic on the United States economy, the United States Congress passed the American Rescue Plan Act of 2021 ("ARPA"). ARPA authorized the Small Business Administration ("SBA") to administer grants from the newly created Restaurant Revitalization Fund ("RRF") to assist restaurants, bars, and other similar places of business that serve food or drink in remaining open or reopening. ARPA appropriated $28.6 billion to the RRF to be awarded to eligible entities.

2. On or about May 3, 2021, the RRF online application portal opened to all applicants. However, under ARPA's statutory priority program, only applications from the designated priority group would be processed during the initial 21 days that the program was operational, or until May 24, 2021. To qualify for the priority group, ARPA required, among

1

other things, that the applying restaurant or other eligible entity be majority-owned by women, veterans, and/or socially and economically disadvantaged individuals.

3. Plaintiff Adia Holdings, Inc. ("Plaintiff") and members of the Class (as defined below) applied for the RRF grants as priority applicants and thereafter received written confirmation from the SBA that their applications had been approved and their awarded funds would be disbursed within three (3) to seven (7) business days (from the approval notice).

4. Despite a delay in the disbursement, the SBA assured Plaintiff and Class members in writing that their awarded funds were forthcoming. But they were not. In the end, the funds never made it to Plaintiff or any Class member, and Plaintiff and Class members were left in a significantly worse position than if the SBA had never agreed and promised to award the funds in the first place.

5. Indeed, rather than follow through on its agreement to pay out the awarded funds, beginning on or about June 23, 2021, Plaintiff and Class members started to receive standardized written notice from the SBA advising that the awarded funds would be rescinded, purportedly due to orders in Tennessee and Texas lawsuits holding that the 21-day priority application program was unlawful. However, based on the timing of their applications, Plaintiff and Class members should have received an award even under the orders in those lawsuits.

6. Plaintiff seeks damages and equitable relief on behalf of the Class, which include, but are not limited to: the disbursement of award amounts that the SBA expressly agreed and promised to pay to Plaintiff and the Class; amounts Plaintiff and the Class expended in reliance on the SBA's agreement and promises to disburse to Plaintiff and the Class their respective awarded amounts in accordance with the RRF program's guidelines for the eligible uses of awarded funds; reimbursement of costs and expenses, including attorneys' fees and expert fees; an order from this Court that the SBA is equitably estopped from denying the existence of its contracts with Plaintiff and the Class and from rescinding the amounts awarded but never paid to Plaintiff and the Class pursuant to their approved RRF applications; and any additional relief this Court may determine to be necessary to provide complete relief to Plaintiff and the Class.

## II. JURISDICTION AND VENUE

7. The United States Court of Federal Claims has jurisdiction over, and is the proper venue for, this action pursuant to 28 U.S.C. § 1491(a)(1).

## III. PARTIES

8. Plaintiff is, and at all times relevant hereto was, a California corporation formed and existing under the laws of the State of California with its principal place of business in the County of San Bernardino, State of California.

9. Defendant is the United States of America.

## IV. RELEVANT FACTS AND BACKGROUND FOR THE CONTRACT

10. ARPA established the RRF to provide funding to restaurants and other eligible entities to help them to stay in business throughout the coronavirus pandemic. ARPA authorized the SBA to administer grants from the RRF to eligible entities and appropriated $28.6 billion to the RRF to be awarded to those entities until no funds remained.

11. The application portal for the RRF opened on May 3, 2021, to all applicants. Under ARPA's statutory priority program, only priority applications were to be processed for the first 21 days (until May 24, 2021). After the conclusion of the priority program, all applications would be considered in the order submitted. The SBA's RRF program guide described the priority application process as follows:

> SBA will prioritize awarding funds to small businesses at least 51 percent owned and controlled by individuals who are women, veterans, and/or socially and economically disadvantaged individuals. Applicants in one of these categories that are operating under an approved plan of reorganization under either a Chapter 11, 12, or 13 bankruptcy and do not have a trustee exercising day-to-day control are eligible for funding under this program. SBA will consider an applicant to be eligible for priority in awarding funds if the applicant is a small business concern that is at least 51 percent owned by one or more individuals who are women, veterans, or socially and economically disadvantaged and if the management and daily business operations of the applicant are controlled by one or more women, veterans, or socially and economically disadvantaged individuals. Applicants must self-certify on the application that they meet these requirements.

12. To apply for the RRF grant, an applicant had to register online on the SBA Restaurant Revitalization Platform and complete an online application.

13. After receiving confirmation that their RRF grant applications had been approved and their awarded funds processed for payment, Plaintiff and Class members reasonably started to expend amounts in accordance with the RRF program's guidelines for the eligible uses of funds, which permitted uses that included, but were not limited to:

- Hiring new employees;
- Rehiring employees;
- Extending hours;
- Raising wages;
- Paying back rent;
- Paying for building equipment, air conditioning, and other repairs;
- Signing expansion agreements; and
- Taking on new loans and/or other debt.

14. Significantly, the only reason Plaintiff and Class members began expending these amounts was because they relied on the SBA's confirmation that their RRF grant applications had been approved and they would be receiving an award in an amount specified in written communications with Plaintiff and Class members. This reliance continued even after Plaintiff and Class members did not receive their awarded amounts within the initial three (3) to seven (7) business days specified by the SBA because the SBA continued to assure Plaintiff and Class members, through written and oral communications, that their awarded funds would be forthcoming.

15. Indeed, when the funds were not initially disbursed, Plaintiff and Class members began calling and messaging the SBA through the designated hotline and instant messaging system. Rather than providing accurate information or warning Plaintiff and Class members that their funds were in danger of being rescinded, SBA representatives simply reassured them that

their funds were forthcoming, and that they could rely on receiving those funds. The SBA never disbursed the approved awards.

16. Congress created the RRF to provide relief to a sector of the economy especially hit hard by government-imposed shutdowns and other restrictions in connection with the coronavirus pandemic, authorizing the SBA to administer $28.6 billion in grant money to assist restaurants, bars, and other similar places of business that serve food or drink in remaining open or reopening.

17. Thus, by informing Plaintiff and Class members of the approval of their applications and award amounts, and thereafter assuring them that their awards would in fact be paid out, the SBA knew or reasonably should have known and expected that Plaintiff and Class members would rely on the same and, accordingly, expend amounts so that they could remain open or reopen, even before the SBA's payment of such awards, which was the SBA's intention in providing the relief under the RRF program in the first place.

18. Beginning on or about June 23, 2021, Plaintiff and Class members started to receive standardized written notice from the SBA stating that their awarded funds would be rescinded. The SBA had never informed Plaintiff or any other Class member at any time prior of the possibility that their awarded funds would not be timely disbursed, or even that their funds were at risk of potentially not being disbursed at all.

19. The purported reason for the recission was rulings in lawsuits filed in Tennessee and Texas which held that the 21-day priority application program was unlawful. In its standardized written notice, the SBA claimed that it was forced to rescind awards due to court orders, explaining:

> The Restaurant Revitalization Fund, enacted through the American Rescue Plan Act, prioritized applications from small businesses owned and controlled by women, veterans, and socially and economically disadvantaged individuals for the first 21 days of the program. After SBA launched the Restaurant Revitalization Fund, three lawsuits were filed challenging the 21-day priority application period—one in the Eastern District of Tennessee and two in the Northern District of Texas. These lawsuits have led to three court rulings that preclude us from

5

disbursing award funds to you. SBA's leadership is frustrated with this outcome and remains committed to doing everything we can to support disadvantaged businesses getting the help they need to recover from this historic pandemic. In the coming days, the SBA's portal system will reflect that SBA will not be able to disburse your award. Specifically, you will see the status of your application in SBA's portal change to "fully canceled." This status change reflects only that the SBA is not able to disburse your award.

20. Plaintiff and Class members were not aware of these facts at any time prior to the SBA's rescission notice. Plaintiff and Class members also had no basis at any time prior to disbelieve that the SBA's express approval of their RRF applications and agreement to pay their awarded amounts, followed by repeated assurances that their awards would be forthcoming when they were not paid out within the initial time period specified by the SBA, would ultimately result in the SBA's rescission and nonpayment of their awards.

21. The SBA, on the other hand, did know all these facts. The RRF application window opened on May 3, 2021. Less than ten (10) days after the RRF's launch, the SBA reported it had received requests for more than twice the $28.6 billion Congress appropriated for the grants. At that time, the program looked likely to provide the vast majority of its funding to approved applicants as the ARPA mandated.

22. However, when the priority policy was challenged shortly after the RRF's launch with the lawsuits in Texas and Tennessee alleging the policy was discriminatory, the SBA immediately ceased processing applications from members of priority groups, which included the payment of awards, as the SBA did not intend to fund any further priority awards before a decision would be rendered in those lawsuits.

23. Again, rather than disclose this information to Plaintiff and the Class – that their grant awards were at risk of being rescinded, which was the truth at the time and which the SBA certainly knew was the truth, SBA representatives instead reassured them that their funds were forthcoming and that they could rely on receiving those funds.

24. In the meantime, the SBA continued to process and pay out non-priority applicant awards, effectively disbursing the then remaining available funds of the $28.6 billion to non-

priority applicants and without any funds left over to pay Plaintiff and Class members their promised awards, even before the decisions in the Texas and Tennessee lawsuits.

25. The oversubscription to the RRF program eventually saw more than 278,000 applications seeking more than $72 billion in funding, as of June 30, 2021, which the SBA also later reported.

### V.     FACTS RELATING TO NAMED PLAINTIFF

26. The RRF application portal opened at 12:00 pm EDT on or about May 3, 2021. Plaintiff submitted its RRF grant application through the RRF online portal at approximately 2:30 pm EDT on that same day.

27. On or about May 18, 2021, Plaintiff received an email confirmation that its application had been approved and that the awarded funds would be disbursed in three (3) to seven (7) business days from the date of notification (May 18, 2021). A true and correct copy of the application approval email is attached hereto as **Exhibit "1"** and is incorporated herein by this reference. Plaintiff's account on the RRF online portal also indicated that Plaintiff's RRF application had been approved and the amount awarded was listed as $169,820.34. A true and correct copy of a digital screenshot reflecting Plaintiff's RRF online portal account is attached hereto as "**Exhibit 2**" and is incorporated herein by reference.

28. A week after the SBA sent its email confirmation, Plaintiff still had not received its awarded funds. On or about May 28, 2021, Plaintiff inquired with the SBA about when the funds would be disbursed. The SBA informed Plaintiff that the timeline for the distribution of funds had been extended to 10 to 14 business days from the notification date. The SBA also suggested that Plaintiff call Plaintiff's bank and ensure that the bank had not rejected the funds.

29. On or about June 6, 2021, pursuant to the SBA's suggestion, Plaintiff called Plaintiff's bank, Wells Fargo Bank ("Wells Fargo"). A Wells Fargo representative confirmed that there were no issues with Plaintiff's account for receipt of such funds and that no funds had been rejected.

30. In accordance with the RRF program's guidelines for the eligible uses of funds, between May 18, 2021 and June 23, 2021, Plaintiff spent $223,596.37, as follows:

    a. $22,940.28 for payroll and related expenses;

    b. $25,144.52 for the cost of goods necessary to operate the restaurant;

    c. $32,508.00 for credit card payments;

    d. $3,176.03 for insurance payments;

    e. $795.31 for utility payments;

    f. $126,200 for real estate down payments with the intention of expanding business operations;

    g. $7,233.82 for various check payments;

    h. $792.00 for SBA loan payments; and

    i. $5,256.41 for furniture.

31. On or about June 10, 2021, Plaintiff again called the SBA to inquire about the delay in disbursement of the awarded funds. The SBA told Plaintiff that the SBA was informed of an internal issue the previous day regarding approved applicants not receiving their funds. The SBA claimed that it had identified the problem and was working to remedy it but did not have an estimated time for when the problem would be resolved.

32. On or about June 15, 2021, Plaintiff called the SBA to request another update. Once again, the SBA assured Plaintiff that, if Plaintiff's application had been approved, then the funds were being held and would be disbursed. The SBA advised Plaintiff to send a message through the online portal, which it did, asking about the awarded funds. Plaintiff received a response from the SBA advising it to continue monitoring the portal for updates. No account-specific information was provided.

33. On or about June 23, 2021, Plaintiff received an email notice from the SBA stating that, due to rulings in the aforementioned lawsuits, no additional funds would be distributed or released. A true and correct copy of the notice is attached hereto as "**Exhibit 3**" and is incorporated herein by this reference. But in fact, the rulings did not preclude the SBA

from performing under the contracts. Nor did the rulings suggest that the SBA should put priority applicants at a disadvantage. But that is precisely how the SBA responded to the rulings. The SBA treated applicants from non-priority groups better than applicants from priority groups, and breached the contracts with timely applicants from priority groups.

34. On or about June 30, 2021, Plaintiff received an email from the SBA announcing the closure of the RRF. A true and correct copy of the closure announcement is attached hereto as "**Exhibit 4**" and is incorporated herein by this reference.

35. Plaintiff was put in a position where it had to borrow money from the SBA in order to stay in business throughout the coronavirus pandemic. Plaintiff received a $382,100 Economic Injury Disaster Loan that it must now pay back to the SBA.

36. Plaintiff was also forced to shut down its restaurant at the Montclair Mall and leave all equipment and fixtures to the landlord. Plaintiff estimates its losses to be at least $500,000.

37. Plaintiff's experience with the SBA as it relates to the RRF is typical of the Class.

38. Plaintiff suffered injury in fact and loss of money and property. It has been damaged, *inter alia*, by the SBA's failure to pay the promised grant award in breach of the parties' agreement as herein alleged.

## VI.   CLASS ALLEGATIONS

39. Plaintiff brings this class action on behalf of itself and all others similarly situated, pursuant to Rule 23 of the Rules of the United States Court of Federal Claims.

40. **"Class" Definition**: The proposed "Class" consists of and is defined as follows:

> All persons and/or entities who applied for the RRF grants as priority applicants, were informed by the SBA that their priority applications were approved and awards would be disbursed in an amount certain, and who did not receive their awards as a result of Defendant's failure to pay the awards.

41. Excluded from the Class are all persons and/or entities who did not qualify to apply for the RRF grants during the priority period and all persons and/or entities who applied

for RRF grants during the priority period but whose applications were rejected. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

42. This action is properly brought as a class action for the following reasons:

    a. **Numerosity—RCFC 23(a)(1)**: The proposed Class is numerous and geographically dispersed throughout the United States, such that the joinder of all Class members is impracticable. While Plaintiff does not know the exact number and identity of all Class members, Plaintiff is informed and believes there are, at a minimum, thousands of Class members. The precise number of Class members can be ascertained through discovery.

    b. **Commonality and Predominance—RCFC 23(a)(2) and 23(b)(3)**: There are questions of law and fact common to the proposed Class which predominate over any questions that may affect individual Class members. Such questions of law and fact include, but are not limited to:

        i. Whether the SBA breached its contracts with priority applicants whose applications had been approved and thereafter received confirmation of their awarded funds;

        ii. Whether the SBA is legally obligated to pay the approved priority applicants their awarded grant amounts and to pay other damages resulting from the SBA's breaches of contract; and

        iii. Whether the SBA is equitably estopped from denying the existence of its contracts with Plaintiff and Class members and from rescinding the amounts awarded but never paid to Plaintiff and Class members pursuant to their approved RRF applications.

    c. **Typicality—RCFC 23(a)(3)**: Plaintiff's claims are typical of the claims of proposed Class members. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class members and are based on the

same legal theories. Plaintiff was injured by the same wrongful practices as all Class members.

d. **Fairness and Adequacy of Representation—RCFC 23(a)(4)**: Plaintiff will fairly and adequately protect the interests of the proposed Class because it has no interests antagonistic to those of the other proposed Class members, and Plaintiff has retained attorneys experienced in class actions and complex litigation.

e. **Generally Applicable U.S. Action/Inaction—RCFC 23(b)(2)**: Also, as explained above, the United States—through its federal government—acted or refused to act on grounds that are generally applicable to the entire Class.

f. **Superiority—RCFC 23(b)(3)**: This class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    i. Given the size of the individual proposed Class members' claims and the expense of litigating those claims, few, if any, proposed Class members could afford to, or would, seek legal redress individually for wrongs Defendant committed against them. Class members have no substantial interest in individually controlling the prosecution of individual actions.

    ii. Moreover, this class action will promote an orderly, efficient, and expeditious administration and adjudication of the proposed Class claims; economies of time, effort, and resources will be fostered; and uniformity of decisions will be ensured.

    iii. Without a class action, proposed Class members who suffered injury will have no redress, and Defendant's violations of law will proceed without remedy.

    iv. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

    v. The disposition of Plaintiff's and proposed Class members' claims in this class action will provide substantial benefits to both the parties and the Court.

43. Defendant has, or has access to, the address information of Class members, which may be used for the purpose of providing notice of the pendency of this action.

44. Plaintiff seeks damages and equitable relief on behalf of the proposed Class on grounds generally applicable to the entire proposed Class.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Breach of Contract)**

45. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 44, above, as though fully set forth herein.

46. Contracts existed between Plaintiff and all Class members, on the one hand, and Defendant, on the other hand.

47. Plaintiff and Class members made offers to Defendant when they applied for the RRF grant through the RRF online portal.

48. Shortly thereafter, Plaintiff and Class members received standard form email notifications from Defendant stating that their offers had been accepted and that they would receive the awarded funds within three (3) to seven (7) business days.

49. In exchange for agreeing to provide Plaintiff and Class members the RRF grants, Plaintiff and Class members, by virtue of their applications and enrollment in the RRF program, agreed to make expenditures in accordance with the RRF program's guidelines for the eligible uses of funds—the purpose of which was to keep restaurants, bars, and other similar places of business that serve food or drink open or to allow them to reopen for the betterment of America

and as a stimulant to the national economy. The RRF Program Guidelines specifically provided that grantees could use funds for the following:

1. Business payroll costs, including sick leave and costs related to the continuation of group health care, life, disability, vision, or dental benefits during periods of paid sick, medical, or family leave, and group health care, life, disability, vision, or dental insurance premiums;

2. Payments on any business mortgage obligation (both principal and interest; note: this does not include any prepayment of principal on a mortgage obligation);

3. Business rent payments, including rent under a lease agreement (note: this does not include any prepayment of rent);

4. Business debt service (both principal and interest; note: this does not include any prepayment of principal or interest);

5. Business utility payments for the distribution of electricity, gas, water, telephone, or internet access, or any other utility that is used in the ordinary course of business for which service began before March 11, 2021.

6. Business maintenance expenses including maintenance on walls, floors, deck surfaces, furniture, fixtures, and equipment;

7. Construction of outdoor seating;

8. Business supplies, including protective equipment and cleaning materials;

9. Business food and beverage expenses, including raw materials for beer, wine, or spirits;

10. Covered supplier costs, which is an expenditure made by the eligible entity to a supplier of goods for the supply of goods that:

• Are essential to the operations of the entity at the time at which the expenditure is made; and

- Is made pursuant to a contract, order, or purchase order in effect at any time before the receipt of Restaurant Revitalization funds; or

- With respect to perishable goods, a contract, order, or purchase order in effect before or at any time during the covered period;

11. Business operating expenses, which is defined as business expenses incurred through normal business operations that are necessary and mandatory for the business (e.g. rent, equipment, supplies, inventory, accounting, training, legal, marketing, insurance, licenses, fees). Business operating expenses do not include expenses that occur outside of a company's day-to-day activities.

Note: Past-due expenses are eligible if they were incurred beginning on February 15, 2020 and ending on March 11, 2023.

Plaintiff's and Class members' expenditures were made for eligible uses under the RRF Program Guidelines.

50. Defendant breached the contracts with Plaintiff and Class members when it failed to disburse the awarded funds to them as Defendant had agreed to do under the contracts.

51. All conditions precedent under the contracts had been performed by Plaintiff and Class members, including registering on the RRF online portal and applying for the RRF grants between May 3, 2021, and May 24, 2021, which was the priority application period.

52. The United States Congress passed ARPA, which gave the SBA direct authorization to enter into agreements and administer grants from the RRF to eligible applicants, like Plaintiff and Class members.

53. The relief requested herein is not inconsistent with the orders of the Courts in the lawsuits referred to, above, in Paragraph 19.

54. As a result of Defendant's breach of contract, Plaintiff and Class members have been damaged.

## VIII.  PRAYER FOR RELIEF

55. WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant, and for Plaintiff and the Class, with relief provided to Plaintiff and the Class—so that:

   A. This action be certified and maintained as a class action under Rule 23(b)(2) and (b)(3) of the Rules of the United States Court of Federal Claims and certifying the proposed Class as defined, appointing Plaintiff as representative of the Class and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

   B. Plaintiff and Class members be awarded damages for Defendant's breach of contract;

   C. Defendant is equitably estopped from denying the existence of its contracts with Plaintiff and Class members and from rescinding the amounts awarded but never paid to Plaintiff and Class members pursuant to their approved RRF applications;

   D. Plaintiff and Class members be reimbursed by Defendant for the costs of this action, including reasonable attorneys' fees and expenses;

   E. Plaintiff and Class members be awarded pre-judgment and post judgement interest at a legal rate; and

   F. Such further relief as this Court may deem just and proper.

DATED:  July 21, 2023   Respectfully submitted,


By: *s/ Jonathan M. Rotter*
Jonathan M. Rotter
Chase M. Stern
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel. (310) 201-9150
Email: jrotter@glancylaw.com
Email: cstern@glancylaw.com

Andrew W. Lamb
Stephen Weisbrod
Weisbrod Matteis & Copley
1200 New Hampshire Ave, NW, Suite 400
Washington, DC 20036
Tel: (202) 499-7900
Email: alamb@wmclaw.com
Email: sweisbrod@wmclaw.com

Josh S. Stambaugh
John D. Maatta
Frost LLP
10960 Wilshire Blvd., Suite 1260
Los Angeles, CA 90024
Phone: (424) 254-0441
Email: josh@frostllp.com
Email: john@frostllp.com

Jeffrey Lee Costell
Costell & Adelson Law Corporation
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
Phone: (310) 458-5959
Email: jlcostell@costell-law.com

*Attorneys for Plaintiff*

**PROOF OF SERVICE**

I hereby certify that on this 21st day of July, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Jonathan M. Rotter*
Jonathan M. Rotter
